**NOT FOR PUBLICATION**                                           **CLOSED**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                                    :
TRACEY D. BELLAMY,                                  :
                                                    :
                            Plaintiff,              :
            v.                                      :        CIVIL ACTION NO. 05-0025 (JAP)
                                                    :
COMMISSIONER OF SOCIAL                              :
SECURITY,                                           :        **OPINION**
                            Defendant.              :
_____:


APPEARANCES:

Patricia M. Franklin, Esq.
81 Halsey Street
P.O. Box. 32207
Newark, NJ 07102
            Attorney for Plaintiff


Christopher J. Christie, Esq.
United States Attorney
Suzanne Marie Haynes, Esq.
Special Assistant United States Attorney
Office of the United States Attorney
Social Security Administration
26 Federal Plaza
Room 3904
New York, NY 10278
            Attorneys for Defendant

PISANO, District Judge:

Before the Court is Tracey D. Bellamy's ("Plaintiff") appeal from the Commissioner of the Social Security Administration's ("Commissioner") final decision denying her request for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. The Court has jurisdiction to review this matter under 42 U.S.C. §§ 405(g) and 1383(c)(3) and decides this matter without oral argument, *see* Fed R. Civ. P. 78. The record provides substantial evidence supporting the ALJ's decision that Plaintiff is able to engage in substantial gainful activity and therefore is not disabled. Accordingly, the Court affirms.

## I.     Background

Plaintiff was born on July 15, 1980. She graduated from high school in 1998. After high school, Plaintiff held various temporary and permanent positions. She is married to Vernon Bellamy. Plaintiff asserts that she became disabled on February 20, 2002.

## A.     Procedural History

Plaintiff filed an application for benefits in August 2002, alleging an inability to work since February 20, 2002, due to Lyme Disease and cardiac problems. The Social Security Administration ("SSA") denied Plaintiff's claim initially and upon reconsideration, as did Administrative Law Judge Richard L. De Steno ("ALJ"). The ALJ's final decision was issued on August 13, 2004, after a hearing on July 15, 2004. Plaintiff then filed an appeal of the ALJ's decision with the Social Security Appeals Council ("Appeals Council") on August 23, 2004. The Appeals Council denied the appeal on November 3, 2004, making the ALJ's decision the Commissioner's final decision on the issue of Plaintiff's request for benefits.

**B.**     <u>**Factual History**</u>

**1.**     <u>**Plaintiff's Employment Prior to Her Disability**</u>

After graduating from high school in 1998, Plaintiff worked at a weight loss center as a cashier/receptionist from August 1998 until May 1999.  She then held temporary positions for several months.  From April 2000 to January 2001, Plaintiff worked at Short Hills Ophthalmology as a receptionist and visual field machine technician.  Plaintiff testified that she put the names of the patients in the machine and sat near the machine while the machine performed tests on the patients.  She also did other tasks around the office such as sterilizing instruments and carrying supplies as heavy as fifty pounds at a time.

Following this job, Plaintiff held temporary positions until August 2001, when she began working as a fax room operator at a New Jersey law firm.  The position at the law firm required Plaintiff to operate seven fax machines, sending and receiving faxes for the attorneys in the firm. In addition, Plaintiff delivered incoming faxes to the attorneys' offices, which required her to walk around the two-floor office once every two hours.  Plaintiff held this job at the onset of her claimed disability in February 2002.  She went on disability on February 19, 2002, then returned to work on April 17, 2002.  Plaintiff worked for three weeks following her April return date, but then stopped working again because the pain was even worse than it had been in February.  The law firm fired Plaintiff in May 2002 for missing too many work days.  Plaintiff has not worked since the law firm terminated her employment.

**2.**     <u>**Plaintiff's Daily Activities**</u>

Plaintiff lives with her husband, Vernon Bellamy.  She does household chores like cooking, cleaning the house, vacuuming, and washing the dishes.  Plaintiff also does laundry at

the laundromat.  She is able to shop at the supermarket and at other stores.  Plaintiff can lift twenty or thirty pounds at a time.  Currently, she drives without a problem.  Plaintiff testified that she has pain in her legs and knees most of the time.  She stated that she frequently hurries to finish an activity so that she can rest.  She takes Ibuprofen and other over-the-counter medications for the pain.  Plaintiff testified that she gets fidgety after ten or fifteen minutes of sitting in one position.  She also claims that she cannot stand for long periods of time without pain.

        **3.      Plaintiff's Medical History**

        The record indicates that Plaintiff has had continuing pain in her arms and legs since her alleged disability onset in February 2002.  Plaintiff was diagnosed with Lyme Disease in February 2002, following the identification of a positive Lyme titer in Plaintiff's blood.  She has also alleged that she has cardiac problems, causing chest pain and heart palpitations, and bronchial asthma, causing shortness of breath.  Plaintiff made emergency visits to the hospital in February 2002 and May 2002, complaining of chest pain, pressure, and palpitations.  However, the physician found no abnormality and made no diagnosis.  Plaintiff has never been hospitalized or treated for her alleged asthma.   Plaintiff testified at the administrative hearing that she used an inhaler to alleviate her symptoms of asthma, but no such medication was documented by any of Plaintiff's physicians.

        Plaintiff's Lyme Disease diagnosis was amended in April 2004 when new blood tests proved inconsistent with Lyme Disease.  Blood tests revealed an elevated rheumatoid factor of 30.7 (normal is 0-20).  Accordingly, Plaintiff was diagnosed with rheumatoid arthritis.  Although Plaintiff technically has rheumatoid arthritis, there has been no documentation of any joint

inflammation or deformity, which normally occur in patients diagnosed with the disease.

Plaintiff originally took Doxycycline, a drug that treats Lyme Disease.  However, Plaintiff stopped taking this medication when her diagnosis was changed to rheumatoid arthritis.  Plaintiff tried a sample of Celebrex to relieve her pain once rheumatoid arthritis was diagnosed, but she did not return to the physician to obtain a full prescription for the Celebrex because she did not find the Celebrex helpful in relieving her symptoms, and she had no health insurance.  Plaintiff's treatment now consists only of Ibuprofen and other over-the-counter medications for the pain that she experiences.

Below is a summary of the medical reports resulting from Plaintiff's visits to various physicians during the course of her alleged disability.

### a.    Dr. Larry Sokolic

On February 20, 2002, Dr. Larry Sokolic examined Plaintiff at the request of the Division of Determination Services ("DDS").  Plaintiff complained of fatigue, muscle aches, joint pain, and lower back stiffness.  She said that she suffered from these symptoms approximately four times per month, but that recently the pain had become more frequent.  Dr. Sokolic interpreted results of Plaintiff's laboratory tests from February 13, 2002, which showed a positive Lyme titer, indicating that Plaintiff had Lyme Disease.  However, Plaintiff had no joint swelling, redness, fever or rashes.  Additionally, the lab results showed a negative rheumatoid factor, sedimentation rate, and antinuclear bodies.

Despite the diagnosis of Lyme Disease, Dr. Sokolic recorded that Plaintiff's basic physical examination was normal with no functional limitations.   Dr. Sokolic also diagnosed Plaintiff with mild anemia.  He prescribed Naprosyn 500mg on a trial basis for her joint pain and

body aches.  In his notes after the examination, Dr. Sokolic noted that Plaintiff desired a medical leave from work, but wrote that he saw "no reason why patient [could not] work at [that] time."

On May 28, 2003, Dr. Sokolic again examined Plaintiff.  After a complete physical examination, he found her to have no physical limitations at all.  He found that Plaintiff was able to carry up to one-hundred pounds at a time.  Dr. Sokolic found no reason for Plaintiff not to work, since he did not find her to be physically disabled in any way, with no functional or environmental limitations.  The only treatment that he prescribed was over-the-counter pain medication.

### b.    Dr. Solomon Alcantara

Plaintiff made an emergency visit to the Hospital Center at Orange in Orange, New Jersey, on February 22, 2002, complaining of chest pain.  Dr. Alcantara examined Plaintiff at the hospital.  After doing an echocardiogram ("ECG") and a chest x-ray, both of which appeared normal, he reported that Plaintiff's heart was in good condition, that her lungs were clear, and that there had been no significant change from her previous chest x-ray, taken on November 16, 2000.  Dr. Alcantara reiterated Plaintiff's diagnosis of Lyme Disease and anemia.

On May 1, 2002, Plaintiff returned to the hospital with chest pain, along with numbness in her left arm and leg.  Dr. Alcantara did another ECG on Plaintiff, which showed a normal sinus rhythm, but T-wave abnormality.  Plaintiff had chest tenderness, but her physical examination was normal in all other respects.  Dr. Alcantara made no further diagnoses during Plaintiff's visit.

Plaintiff returned to the hospital a third time on May 14, 2002, complaining of heart palpitations and respiratory pain.  At that time, Plaintiff exhibited a full range of motion and had

6

full muscle strength.  Dr. Alcantara prescribed Tetracycline, an antibiotic used for many different types of bacterial infections.  The doctor also advised Plaintiff to continue taking Doxycycline.[1]

######    c.    **Dr. John M. Augustin**

Dr. Augustin examined Plaintiff on November 6 or 7, 2002.  Plaintiff informed Dr. Augustin that she had join pain and asthma that was triggered by cigarette smoke and exposure to cold temperatures.  Dr. Augustin found that she did have Lyme Disease, but showed no evidence of joint swelling, sensory motor deficits, or muscle weakness.  He further found that Plaintiff's grip strength was normal.  Additionally, Dr. Augustin found that Plaintiff had no objective symptoms of asthma, that her lungs were clear, and her chest showed normal respiratory expansion.

######    d.    **Dr. R. Bush**

Dr. Bush performed a physical residual functional capacity assessment on the Plaintiff on behalf of the SSA on November 25, 2002.  Dr. Bush found her already-diagnosed Lyme Disease and possible asthma to be the reasons for her alleged joint pain, chest pain, and heart palpitations. Regarding Plaintiff's physical limitations, Dr. Bush called Plaintiff's physical exam "essentially normal."  He found that Plaintiff could frequently lift and carry ten pounds or less, could stand and/or walk for at least two hours in the course of an eight-hour work day, and could sit for about six hours of an eight-hour work day.   Dr. Bush also commented that "[t]he ultimate effect on function is the ability to frequently sustain persistence and pace in an 8 hour workday."

Based on his medical findings, Dr. Bush concluded that Plaintiff's residual functional

---

[1]  It is unclear from the record which physician originally prescribed Doxycycline to Plaintiff.

capacity allowed her to participate in sedentary work[2], but that she should avoid prolonged exposure to extreme cold, heat, wetness and humidity.  It is unclear from Dr. Bush's written conclusions whether exposure to these atmospheric conditions would aggravate Plaintiff's Lyme Disease, possible asthma, or both.

**e.   Dr.  Dennis DiGiacomo**

Dr. DiGiacomo examined Plaintiff on May 17, 2004.  Dr. DiGiacomo found that Plaintiff's laboratory results were inconsistent with a diagnosis for Lyme Disease.  The lab results showed a positive rheumatoid factor of 30.7 (normal is 0-20).  In response to Dr. DiGiacomo's diagnosis of rheumatoid arthritis, Plaintiff stopped taking medication for Lyme Disease.  Dr. DiGiacomo gave her a sample of Celebrex and directed her to come back for a full prescription if she benefitted from the drug.  He told Plaintiff that her rheumatoid arthritis was not "too bad," but that a person Plaintiff's age should not have rheumatoid arthritis at all.

## II.   Standard of Review

A reviewing court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. § 405(g); § 1383(c)(3) ("The final determination of the Commissioner of Social Security. . . shall be subject to judicial review as provided in section 405(g) . . ."); *Williams v.  Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).  "Substantial evidence" means more than "a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.  The

---

[2]  Sedentary work involves primarily sitting, although a certain amount of walking and standing is often involved; lifting no more than ten pounds at a time; and occasionally lifting or carrying articles like files, ledgers, and small tools.  *See* 20 C.F.R. §§ 404.1567(a), 416.967(a).

inquiry is not whether the reviewing court would have made the same determination, but rather

whether the Commissioner's conclusion was reasonable. *Brown v. Bowen*, 845 F.2d 1211, 1213

(3d Cir. 1988). Thus, substantial evidence may be slightly less than a preponderance. *Stunkard*

*v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).

> Some types of evidence will not be "substantial." For example,
>
> '[a] single piece of evidence will not satisfy the substantiality test if the
> [Commissioner] ignores, or fails to resolve, a conflict created by
> countervailing evidence. Nor is evidence substantial if it is overwhelmed by
> other evidence - particularly certain types of evidence (e.g. that offered by
> treating physicians) - or if it really constitutes not evidence but mere
> conclusion.'

*Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting *Kent*

*v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

The reviewing court must review the evidence in its totality. *See Daring v. Heckler*, 727

F.2d 64, 70 (3d Cir. 1984). In order to do so, "a court must 'take into account whatever in the

record fairly detracts from its weight.'" *Schonewolf v. Callahan*, 9723 F. Supp. 277, 284 (D.N.J.

1997) (quoting *Willibanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir.1988)

(internal citation omitted)). The Commissioner has a corresponding duty to facilitate the court's

review: "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately

explain in the record his reasons for rejecting or discrediting competent evidence." *Ogden v.*

*Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d

Cir. 1986)). As the Third Circuit has held, access to the Commissioner's reasoning is indeed

essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently
> explained the weight he has given to obviously probative exhibits, to say that

> his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (quoting *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977)).  Nevertheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182.

## A.     The Record Must Provide Objective Medical Evidence

Under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* and 42 U.S.C. § 1381 *et seq.*, a claimant is required to provide objective medical evidence in order to prove her disability.  42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless she furnishes such medical and other evidence of the existence thereof as the Secretary may require."); 42 U.S.C. § 1382c(H)(i) ("In making determinations with respect to disability under this subchapter, the provisions of sections. . . 42 U.S.C. § 423(d)(5)(A) of this title shall apply in the same manner as they apply to determinations of disability under subchapter II of this chapter.").

Accordingly, a Plaintiff cannot prove that she is disabled based solely on her subjective complaints of pain and other symptoms.  *See Green v. Schweiker*, 749 F.2d 1066, 1069-70 (3d Cir. 1984) (emphasizing that "subjective complaints of pain, without more, do not in themselves *constitute* disability.")  She must provide medical findings that show that she has a medically determinable impairment of such severity that she is unable to engage in any substantial gainful activity.  *See id.; see also* 42 U.S.C. § 423(d)(1)(A) (defining a disabled person as one who is "unable to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment . . ."); 42 U.S.C. § 1382c(a)(3)(A) (same).

Furthermore, a claimant's symptoms, "such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect . . . [one's] ability to do basic work activities unless "medical signs" or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(b); *see Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (rejecting claimant's argument that the ALJ failed to consider his subjective symptoms where the ALJ made findings that complaints of pain and symptoms were inconsistent with objective medical evidence and claimant's hearing testimony); *Williams*, 970 F.2d at 1186 (denying claimant benefits where claimant failed to proffer medical findings or signs that he was unable to work).

## B.    The Five-Step Analysis for Determining Disability

Social Security Regulations provide a five-step sequential analysis for evaluating whether a disability exists. *See* 20 C.F.R. § 20 C.F.R. §§ 404.1520, 416.920.[3] For the first two steps, the claimant must establish (1) that she has not engaged in "substantial gainful activity" since the onset of her alleged disability, and (2) that she suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. §§ 404.1520(a)-(c), 416.920(a)-(c). Given that a claimant bears the burden of establishing these first two requirements, the failure to meet this burden automatically results in a denial of benefits. *See Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987).

---

[3] The regulations implementing the standard for obtaining disability insurance benefits, 42 U.S.C. § 401 *et seq.*, and those implementing the standard for supplemental security income, 42 U.S.C. § 1381 *et seq.* are the same in all relevant respects. *See Sullivan v. Zebley*, 493 U.S. 521, 526 n.3 (1990).

If the claimant satisfies her initial burdens, the third step requires that she provide evidence that her impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the Code of Federal Regulations ("Listing of Impairments"). *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). Upon such a showing, she is presumed to be disabled and is automatically entitled to disability benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If she cannot so demonstrate, the benefit eligibility analysis proceeds to steps four and five.

The fourth step of the analysis focuses on whether the claimant's "residual functional capacity" sufficiently permits her to resume her previous employment. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). "Residual functional capacity" is defined as "that which an individual is still able to do despite limitations caused by his or her impairments." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is found to be capable of returning to her previous line of work, then she is not "disabled" and not entitled to disability benefits. 20 C.F.R. §§ 404.1520(e), 416.920(e). Should the claimant be unable to return to her previous work, the analysis proceeds to step five.

At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial gainful work in the national economy, considering her residual functional capacity, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f). The Dictionary of Occupational Titles classifies the different levels of physical exertion, namely, sedentary, light, medium, heavy, and very heavy, that could be associated with a job. *See* 20 C.F.R. §§ 404.1567, 416.967. If the Commissioner cannot satisfy the burden, the claimant shall receive social security benefits. *Yuckert,* 482 U.S. at 146-47 n.5.

Prior to 1978, vocational experts were used to determine whether there were suitable jobs in the national economy that the claimant could perform. *See, e.g., Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000); *see also Cartenega v. Comm'r of Social Security*, No. 01-2812, 29 Fed. Appx. 883, 2002 WL 334115, at *1 (3d Cir. Feb. 28, 2002). However, in 1978, the Secretary of Health and Human Services promulgated the Medical-Vocational Guidelines, 20 C.F.R., Part 404, Subpart P, Appendix 2, also termed "grids," to aid administrative law judges and ultimately, the Commissioner, in determining whether suitable jobs exist in the national economy for claimants with exertional impairments.[4] *See, e.g.*, *Sykes*, 228 F.3d at 263; *see also Cartenega*, 2002 WL 334115, at *1. These grids establish the types and numbers of jobs in the national economy that exist for claimants with exertional impairments. *See Sykes*, 228 F.3d at 263. When a claimant with exertional impairments fits into a specific category based on the person's residual functional capacity, age, education, and work experience, the grids direct a conclusion that there is work in the national economy that the claimant can perform. *See id.*

However, where a claimant has both exertional and non-exertional impairments, the grids do not account for the erosion of the applicable occupational base[5] in light of the non-exertional

---

[4]  Exertional impairments are those that affect the ability to meet the strength demands of a particular job, such as sitting, standing and carrying. Non-exertional impairments are limitations other than strength demands, such as difficulty functioning due to mental illness, difficulty seeing or hearing, and difficulty concentrating. *See, e.g.*, 20 C.F.R. §§ 404.1569a(a)-(c); 416.969a(a)-(c); *Cartenega v. Comm'r of Social Security*, No. 01-2812, 29 Fed. Appx. 883, 2002 WL 334115, at *2 (3d Cir. Feb. 28, 2002).

[5]  The Plaintiff's occupational base is " 'the number of occupations, as represented by [residual functional capacity], that an individual is capable of performing.' " *Santiago v. Barnhart*, 367 F. Supp. 2d 728, 735 n.7 (E.D. Pa. 2005) (quoting S.S.R. 83-10, 1983 WL 31251, at *7 (1983)).

limitations.  *See, e.g.*, *Sykes*, 228 F.3d at 269-70; *see also Cartenega*, 2002 WL 334115, at \*2.

Thus, in such circumstances, the ALJ must rely on the testimony of a vocational expert or other

additional evidence to determine the effects of the claimant's non-exertional impairments.  *See,*

*e.g.*, *Sykes*, 228 F.3d at 273.

### III.    The ALJ's Decision

After reviewing the available evidence and considering Plaintiff's testimony, the ALJ

concluded that Plaintiff was not disabled.  The ALJ made the following findings:

### A.    Steps One, Two, and Three

The ALJ determined that Plaintiff met step one of the analysis because she had not

engaged in substantial gainful activity since the alleged onset of her disability.  Next, the ALJ

had to determine whether any of Plaintiff's ailments were  "severe".  The ALJ found Plaintiff's

allegations of asthma and cardiac problems not to be "severe" according to the regulations.  With

respect to Plaintiff's alleged asthma, the ALJ specifically found that the record was devoid of any

objective medical evidence of asthma, and that at the July 15, 2004 hearing in this matter,

Plaintiff never mentioned asthma or other breathing problems.  The ALJ further determined that

Plaintiff was never diagnosed with cardiac problems and that there was no evidence of such in

the record.

The ALJ found that Plaintiff's rheumatoid arthritis was severe within the meaning of the

regulations; however, the ALJ concluded that Plaintiff's arthritis was not severe enough to meet

or medically equal any of the impairments documented in the Listing of Impairments.  Therefore,

Plaintiff was not automatically entitled to disability benefits.  Plaintiff does not challenge the

ALJ's findings at steps one, two, or three.

14

**B.      Step Four**

The ALJ proceeded to step four of the analysis, which focuses on whether the claimant's residual functional capacity sufficiently permits her to resume her previous employment. As indicated above, if the claimant is found to be capable of returning to her previous type of work, then she is not "disabled" and therefore not entitled to disability benefits.  A comparison between the claimant's residual functional capacity and the requirements of her past relevant work is necessary to satisfy step four.  *See* 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f); *Burnett v. Comm'r of Social Security Administration*, 220 F.3d 112, 120 (3d Cir. 2000).

The ALJ determined that based on her testimony of daily living, subjective complaints of pain and other symptoms, and the objective medical evidence, Plaintiff retained the residual functional capacity for the full range of sedentary work.   In making this determination, the ALJ found that Plaintiff could lift up to ten pounds and that she could sit for up to six hours and stand and walk for up to two hours in an eight-hour day.  The ALJ specifically noted that no examining or treating physician opined that Plaintiff was disabled from all work activity.  Instead, Dr. Sokolov and Dr. Augustin reported that Plaintiff had no physical limitations and no evidence of joint problems.  Dr. DiGiacomo stated that Plaintiff's rheumatoid arthritis was "not too bad." Further, Plaintiff testified that she drives, goes shopping, and does household chores.  Based on the foregoing, the ALJ noted that he did not find Plaintiff's subjective complaints of pain and other symptoms to be fully credible.  Thus, the ALJ determined that Plaintiff could perform work which required sitting for most of the day, with some standing and walking, resulting in a residual functional capacity for sedentary work.

15

Given this residual functional capacity, the ALJ concluded that Plaintiff was unable to return to her previous work as either a visual field technician in a doctor's office or a fax room operator at a law firm.  He stated that Plaintiff could not return to either of her previous jobs because they involved too much standing and/or walking and lifting of heavy things to be consistent with Plaintiff's residual functional capacity.  Plaintiff does not object to the ALJ's ultimate finding at this step that Plaintiff cannot return to her previous employment; however, she objects to the ALJ's determination of her residual functional capacity.

**C.**      **Step Five**

After taking into consideration Plaintiff's age, residual functional capacity, education, and work experience, the ALJ determined that Plaintiff could perform other occupations in the national economy and thus, was not disabled.  In this regard, the ALJ specifically noted that Plaintiff was young (twenty-four years old), semi-skilled, has a high school education, and was able to perform a full range of sedentary work.  He stated that due to Plaintiff's young age, transferability of skills was not an issue.  The ALJ found that Plaintiff had no significant non-exertional limitations.  Applying Medical-Vocational Rule 201.28, the ALJ concluded Plaintiff could perform jobs in the national economy and thus, that Plaintiff was not disabled.

**IV.**    **Legal Discussion**

Plaintiff now raises the following arguments challenging the ALJ's decision:

1.      The ALJ erred in determining that Plaintiff retained the residual functional capacity to perform a full range of sedentary work;

2.      The ALJ erred in his mechanical application of the Medical-Vocational Guidelines given Plaintiff's non-exertional impairments.

16

The Commissioner contends that the ALJ's decision is supported by substantial evidence and therefore should be affirmed.

**A.**    **Residual Functional Capacity Determination**

Plaintiff argues that the ALJ erred in finding that Plaintiff retains a residual functional capacity that allows her to perform the full range of sedentary work because (1) the ALJ failed to consider Plaintiff's testimony that she needed to alternate positions between sitting and standing during the course of a given day; and (2) the ALJ failed to consider certain findings made by Dr. Bush with respect to Plaintiff's ability to sustain persistence and pace during the workday.  The Court will address each of these points in turn.

First, the Court rejects Plaintiff's argument that her purported need to alternate positions during a work day undermines the ALJ's findings that she could perform the full range of sedentary work.  Plaintiff's argument is based on Social Security Ruling 96-9p which states that when a person needs to "alternate the required sitting of sedentary work by standing (and possibly walking) periodically" and where such need cannot be accommodated during scheduled breaks and a lunch period, "the occupational base for a full range of unskilled sedentary work will be eroded").   S.S.R. 96-9p, 1996 WL 374185, at *7 (July 2, 1996).  This argument fails because Plaintiff's testimony that she needs to alternate positions is contradicted by the objective medical evidence and her testimony of daily living.

The objective medical evidence refutes Plaintiff's alleged functional limitations.  Dr. Sokolic, a treating physician, found that Plaintiff had no physical limitations and that he saw no reasons why she could not work.  Dr. Augustin determined that Plaintiff had no joint redness, deformity, swelling or inflammation and that her grip and muscle strength were normal.  Dr.

17

DiGiacomo stated that Plaintiff's rheumatoid arthritis was "not too bad."  Further, Dr. Bush, who specifically evaluated Plaintiff's residual functional capacity, reported that Plaintiff was capable of sedentary work.  No physicians support Plaintiff's contentions that she could not perform sedentary work based on her need to alternate between sitting and standing.

Furthermore, Plaintiff's testimony of her current daily activities also supports the finding that Plaintiff can engage in the full range of sedentary work.  Plaintiff testified that she does a number of household chores including cleaning, vacuuming, cooking and laundry.  She also reported that she shops at the grocery store and at the mall.  When questioned, Plaintiff estimated that she could walk one quarter of a mile and lift up to thirty pounds at a time.  In fact, Plaintiff specifically emphasized that when she tires, she must sit down to rest because her pain is mostly in her legs and knees.  Also, Plaintiff testified that she only took over-the-counter medication for her joint pain.

The only evidence Plaintiff puts forth to support her claims are her subjective complaints that she is in pain when she has to alternate between sitting and standing.  However, as stated above, the ALJ is entitled to evaluate the credibility of Plaintiff's complaints and to reject such subjective complaints if they are in conflict with the objective medical evidence.  Further, there is no evidence that her needs could not be accommodated by her taking short breaks to shift positions and eliminate any stiffness.  Thus, the ALJ drew the reasonable conclusion that Plaintiff's alleged pain was less debilitating than she described and that she could perform sedentary work.

Second, the Court also rejects Plaintiff's contention that the ALJ failed to adequately determine her residual functional capacity because he did not acknowledge certain comments

made by Dr. Bush.  Specifically in this regard, the Plaintiff argues that the ALJ did not explain

his rejection of the "probative evidence" represented by Dr. Bush's statement that "[t]he ultimate

effect on function is the ability to frequently sustain persistence and pace in an 8 hour workday."

The Court fails to see how this comment is "probative evidence" that Plaintiff is unable to

sustain sufficient pace in a sedentary job during the course of a workday.  In fact, this statement

is not even an opinion on Plaintiff's ability to function.

Dr. Bush himself concluded that Plaintiff could perform sedentary work.  This is

consistent with the findings by Dr. Sokolic, who found that Plaintiff had no physical limitations;

Dr. Augustin, who found no evidence of joint swelling, redness, deformity or inflammation when

he examined Plaintiff; and Dr. DiGiacomo who found that Plaintiffs condition was "not too bad."

Thus, the ALJ did not err in failing to consider Dr. Bush's comments in this regard.

To the extent Plaintiff is claiming that the ALJ entirely disregarded evidence which

suggested that Plaintiff could not sustain pace during the course of a workday, as indicated

above, the ALJ emphasized that objective medical evidence indicated that Plaintiff had no

significant physical limitations.  Further, Plaintiff can point to no medical evidence, besides her

own subjective complaints, to support her contentions.  Thus, any such argument is rejected.

Accordingly, based on the foregoing, the ALJ's determination that Plaintiff could perform

the full range of sedentary work is supported by substantial evidence.  Remand is not warranted.

**B.    Application of the Medical-Vocational Guidelines**

Plaintiff claims that the Commissioner erred in mechanically relying on the Medical-

Vocational Guidelines, or "grids," and specifically Medical-Vocational Rule 201.28, to reach an

unfavorable decision in her case.  Plaintiff asserts that because she has the non-exertional

19

impairments of pain and the need to frequently alternate between sitting and standing, the ALJ was required to consult a vocational expert before determining that she was not disabled.  The Court disagrees.

In rendering his decision, the ALJ explicitly found that Plaintiff did not suffer from any significant non-exertional limitations that diminished her residual functional capacity.  This finding was supported by substantial evidence.  As noted above, the physicians who examined Plaintiff opined that Plaintiff's functioning was normal; that her joints showed no evidence of swelling, deformity, or inflammation; that her muscle functioning was good; that she could perform at least sedentary work, and that her condition was "not too bad."   None of these doctors noted that Plaintiff needed to alternate between sitting and standing during the course of a work day due to pain or otherwise confirmed Plaintiff's complaints of non-exertional limitations.  Further, Plaintiff currently takes only over-the-counter medications for the pain she experiences, which she stated was not constant pain.  Also, the ALJ specifically indicated that he did not give great weight to Plaintiff's subjective complaints of pain because they were not supported by the objective medical and other evidence in the record.

Thus, the ALJ's determination that Plaintiff had no significant non-exertional limitations, and subsequent mechanical application of the Medical-Vocational Guidelines was proper.  The ALJ was not required to consult a vocational expert.  Remand is therefore not warranted on this basis.  *See Caruso v. Comm'r of Social Security*, No. 03-2709, 99 Fed. Appx. 376, 2004 WL 1147065, at *4 (3d Cir. May 19, 2004) (rejecting Plaintiff's argument that the ALJ improperly relied on the guidelines where the objective medical evidence and claimant's own testimony did not support her alleged non-exertional impairments); *Cartenega*, 2002 WL 334115, at *2

(holding that ALJ's application of the guidelines without consulting vocational expert was reasonable where the objective medical evidence failed to support Plaintiff's non-exertional limitations).

**V.**   **Conclusion**

For the foregoing reasons, the Court concludes that substantial evidence supports the ALJ's decision denying Plaintiff's request for DIB and SSI and thus, the Commissioner's ultimate decision is affirmed.  An appropriate order accompanies this opinion.

Dated: August 29, 2006                              s/ Joel A. Pisano
                                                    JOEL A. PISANO U.S.D.J.


Orig:   Clerk
cc:     All parties
        File